UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HENRY DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:05-0280 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| HOEGANAES CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This matter comes before the court on a Motion for Summary Judgment filed by the defendant (Docket No. 23), to which the plaintiff has responded (Docket No. 30) and the defendant has replied (Docket No. 37). For the reasons discussed herein, the defendants motion will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, Henry Duncan, worked as an atomizer operator from 1980 to 2001 for the defendant, Hoeganaes Corporation ("Hoeganaes"), a steel producer in Gallatin, Tennessee.[1] The record is not clear as to what exact function an atomizer performs in the steel-making process; however, the parties agree that it involves such things as a pry bar, a tonnage box, and the activity of "knocking snodders." Typically, the atomizer operator is responsible for operating the atomizer control panel and must also, from time to time, move the three-to-four-ton tonnage

---

[1] Unless otherwise noted, the facts have been drawn from the plaintiff's Complaint (Docket No. 1), attach. Compl., the plaintiff's Response to the Motion for Summary Judgment (Docket No. 30), the plaintiff's Response to Defendant's Statement of Facts (Docket No. 31), and the plaintiff's Affidavit (Docket No. 32).

1

box with the pry bar, lift and replace the twenty-five pound cylinders, and "knock snodders." "Knocking snodders" is somewhat relevant to this case and, therefore, must be described. The atomizer involves a nozzle of some sort, out of which spurts molten steel. Bits of steel stick to the nozzle in large droplets—presumably these are the snodders—and the atomizer operator must periodically knock these expanding droplets from the nozzle with a pipe. Snodders must be knocked off anywhere from fifty to five hundred times during a twelve-hour shift, and the knocking is typically accomplished with a five pound metal pipe, approximately eight feet in length.

In 1994, Mr. Duncan injured his back while moving a tonnage box with a pry bar. Mr. Duncan underwent surgery in 1997 and returned to work in November of that year, performing light duty work on the atomizer. In the month of February 1998, the plaintiff alleges that he returned to full duty work on the atomizer without restriction. However, later that year, Mr. Duncan's doctor placed him on a lifting restriction of approximately twenty-five to thirty pounds. The restriction remained in place throughout the duration of the plaintiff's employment at Hoeganaes. Notwithstanding the restriction, the plaintiff continued to work as an atomizer operator until September 2000, performing all of the functions described above. The defendant worked in pain, and his condition worsened. (Docket No. 26, Ex. 1 at p. 44.)

During this period, the defendant alleges that the plaintiff told his supervisor, Dale Martin, "Dale, I just can't do it no more," in reference to his job duties. (Docket No. 31 at ¶ 27.) Although the plaintiff does not dispute Dale Martin's recollection, he denies "telling anyone at Hoeganaes that he did not think he could perform his job anymore." (*Id.*) He does admit that performing his job duties put his back in pain. (Docket No. 26, Ex. 2 at p. 44.)

2

In the month of September 2000, the plaintiff sought treatment for his back pain from a physician, Dr. Hazelwood. Dr. Hazelwood told the plaintiff to refrain from working for two weeks in order to rest his back. The plaintiff followed Dr. Hazelwood's instructions. When the plaintiff returned to work, personnel at Hoeganaes determined that he should continue resting his back and placed him on salary continuation until December 2000. At that time, Mr. Duncan alleges that he returned to work at the atomizer deck.

On January 5, 2001, Mr. Duncan was reassigned to work in the storeroom, where his duties were sweeping and putting things on racks. Mr. Duncan admits that performing these duties irritated his back condition, though he denies that he told anyone at Hoeganaes about that irritation. The defendant alleges that its employees observed that Mr. Duncan was in pain. Further, Mr. Duncan admits that he told John North, Hoeganaes' Corporate Manager of Safety and Security, that he needed to see a new physician, Dr. Cushman. John North set up an appointment for the plaintiff to see Dr. Cushman.

At some point during this period, there was a reorganization of the atomizer deck. All atomizer employees were required to bid for positions working on the atomizer deck. However, the plaintiff did not submit a bid because he was concerned that his doctors would not let him work there.

Shortly thereafter, Mr. Duncan was moved out of the storeroom and into a light duty position in shipping and receiving, where he filed papers. The defendant alleges that the assignment was only temporary, to provide time for the defendant to find the plaintiff another job that met his back restrictions, and that it informed the plaintiff of the assignment's temporary nature. The plaintiff, however, denies that he was told whether the assignment was temporary or

3

permanent.

In February 2001, the plaintiff was out of work for four additional days for occupational therapy. In addition, at some point in 2001, on the instruction of Dr. Hazelwood, the plaintiff attended a work conditioning program.

Thereafter, in the Spring of 2001, Bob Svarda, the Human Resources Manager for Hoeganaes, met with Mr. Duncan to discuss what jobs Mr. Duncan could perform for Hoeganaes. Mr. Svarda discussed various positions with Mr. Duncan and asked Mr. Duncan whether he could perform them. Mr. Duncan alleges that he responded that he "probably could" perform many of the jobs. However, the defendant alleges that Mr. Svarda left the meeting believing that Mr. Duncan could not perform any of the open positions at Hoeganaes.

Based on the input of several Hoeganaes management employees, the defendant terminated the plaintiff on April 9, 2001. The defendant alleges that its decision was based on the fact that the plaintiff could not perform any available job at the plant and that even the performance of light duty tasks had caused him pain. Subsequently, although he has applied for positions at Bridgestone and Gap stores, and was tested for a position at the rehabilitation center in Gallatin, the plaintiff has not been able to find employment due to his physical limitations.

The plaintiff is now under a ten-pound lifting restriction, which means that he is not permitted by his physicians to lift more than ten pounds. The plaintiff's physicians have also placed permanent restrictions on the plaintiff against prolonged sitting, standing, or bending.

On April 5, 2005, the plaintiff filed this case alleging race discrimination in violation of 42 U.S.C. § 1981. On June 30, 2006, the defendant filed a motion for summary judgment.

4

## ANALYSIS

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Our function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case—provided that the nonmoving party bears the burden for that element—the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine

issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  And we must keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).  If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted.  *Anderson*, 477 U.S. at 249-52.  Finally, "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).  With this standard in mind, the court turns to an analysis of the plaintiff's claims.

**II.     Disparate Treatment In Violation Of Section 1981**

The plaintiff asserts that, in being terminated, he was discriminated against in violation of § 1981.  Section 1981 cases follow the burden-shifting structure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Newman v. Federal Exp. Corp*, 266 F.3d 401, 406 (6th Cir. 2001) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)).  Under the *McDonnell Douglas* framework, once the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the adverse employment action.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  If the defendant is able to make that showing, the burden shifts back to the plaintiff to demonstrate that the reason offered by the defendant was not its true motivation, but, rather, a pretext for discrimination.  *Id.*; *see also Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004); *Penny v. UPS*,

6

128 F.3d 408, 417 (6th Cir. 1997). Because the plaintiff does not set forth an adequate *prima facie* case, the remaining stages of the analysis are unnecessary.

**A.     *Prima Facie* Case**

To establish a *prima facie* case for a discriminatory employment action, the plaintiff must show the following: (1) that he belongs to a protected class, (2) that he performed his job satisfactorily, (3) that he suffered an adverse employment action, and (4) that a comparable non-protected person was treated better. *McDonnell Douglas*, 411 U.S. at 802, *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-83 (6th Cir. 1992). Because the plaintiff cannot show that a comparable, non-protected person was treated better than he was, the plaintiff's *prima facie* case fails.

A "comparable non-protected person" (also referred to as a "similarly situated non-protected employee," *Newman v. Federal Exp. Corp.*, 266 F.3d at 406), must be "nearly identical" to the plaintiff with regard to all relevant aspects of his or her employment situation. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). *See also Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 582 (6th Cir. 1992) (holding that, in the disciplinary context, the colleague and the plaintiff "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"). The plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated' . . . ; however, the plaintiff and the comparable [employee] must be similar in all *relevant* aspects." *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 732 (6th Cir. 2000) (quoting *Ercegovich v.*

7

*Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

The *Hoskins* case illuminates the present inquiry. In *Hoskins*, the plaintiff, a former deputy sheriff, was terminated after an injury rendered her unable to restrain inmates. *Hoskins*, 227 F.3d at 722. Due to several bone fractures that had been caused when a horse fell on her, the plaintiff was told by her physicians that she "should not be lifting or engaging in any activity that would jar her chest, such as shooting a shotgun or getting into a situation in which she could get hit in the chest." *Id*. at 722-723. The plaintiff alleged that, in being terminated, she had been differently treated from similarly situated male deputies, in violation of Title VII; however, the court found that the plaintiff had not identified any comparable male employees who were "similarly situated." *Id*. at 732. Although the proffered male deputies had "all suffered disabling injuries and, at least for some period of time, were unable to perform the essential functions of a deputy," they were not "*permanently* restricted from performing an essential function of the deputy . . . position." *Id*. Furthermore, the court found that none of the proposed male deputies were injured to as great an extent as the plaintiff and that they could be accommodated in some cases by riding passenger side, instead of driving, and by not carrying a handgun. *Id*.

As in *Hoskins*, the plaintiff in the current action has failed to identify a similarly situated white employee whose injuries have been accommodated. The plaintiff identifies Wendell Williams, a white employee who was placed on a lifting restriction but who was allowed to return to the atomizer deck after performing lawn mowing duties for two weeks.[2] The plaintiff

---

[2] Although the plaintiff initially named seven other similarly situated white employees, he seems to have waived the contention that those individuals are, in fact, similarly situated in his response brief. In any event, because those individuals did not have permanent restrictions limiting their capacity to perform important tasks in the same degree as the plaintiff, they were not similarly situated to the plaintiff for the purposes of this action.

8

alleges that Wendell Williams continues to be accommodated in that his atomizer assistants do all the heavy lifting—moving the tonnage box and lifting the cylinders—while Williams simply operates the control panel and occasionally knocks off snodders.

However, Mr. Williams and the plaintiff differ in several important ways. The plaintiff has not identified what medical restriction Mr. Williams labors under, but, whatever the restriction amounts to, it permits Mr. Williams at the very least to stand or sit in the same place for a twelve-hour shift, something that the plaintiff, unfortunately, is unable to do. According to the defendant, Mr. Williams' restriction is fifty pounds, well above the plaintiff's current ten pound restriction or the twenty-five pound restriction he labored under in 2001. And unlike the plaintiff, Mr. Williams never suffered a back injury so severe as to require surgery. In addition, the plaintiff concedes that Mr. Williams occasionally "knocks snodders," which requires manipulating a five-pound metal pipe. Although the plaintiff maintains that he could perform the job under Mr. Williams' accommodations, it must be noted that the plaintiff was unable to wield a broom without irritation in 2001.

Similarly, for two weeks during his recuperative period, Mr. Williams was able to perform lawn mowing duties, whereas the plaintiff felt irritation and required additional medical treatment while sweeping and putting things on racks. Unlike Mr. Williams, the plaintiff was tested for a position at the rehabilitation center in 2002 or 2003, with the conclusion that no available position suited him. Finally, it must be noted that, unlike the plaintiff, there is no evidence that Mr. Williams failed to bid for a position on the atomizer deck when the deck was reorganized.

The plaintiff has not been able to demonstrate that Mr. Williams' injuries are either as

permanent or as severe as his own, and the fact that Mr. Williams was able to perform lawn mowing duties and is able to complete atomizer deck shifts, during which he knocks snodders, militates strongly against such a showing. Therefore, the court concludes that Mr. Williams is not similarly situated to the plaintiff and that the plaintiff's *prima facie* case must fail.[3]

## III. Plaintiff's Remaining Claims

In his complaint, the plaintiff additionally alleged several 42 U.S.C. § 1981 claims involving harassing conduct and failure to promote, arising from incidents that occurred in the 1980s and 1990s. As the defendant points out, "[t]he statute of limitations for bringing Section 1981 actions is four years." *Lewis v. Clark of Clarksville*, 2005 WL 2416385, *1 (M.D. Tenn. Sept. 30, 2005) (citing *Anthony v. BTR Automotive Sealing Systems, Inc.*, 339 F.3d 506, 514 (6th Cir. 2003). The present action was filed on April 5, 2005; therefore, any § 1981 causes of action accruing before the date of April 1, 2005, are untimely. Therefore, because the alleged harassment and incidents where the plaintiff was not promoted all occurred prior to April 1, 2005, all causes of action in this case arising from those incidents have expired under the four-year statute of limitations and will be dismissed.

---

[3]The plaintiff alleges that, in the absence of demonstrating a similarly situated white employee, he may prove an inference of discrimination "by other means." That is not the law in the Sixth Circuit. Because he does not allege that he was "replaced by someone outside the protected class" the plaintiff must show that he "was treated differently from similarly situated members of the unprotected class" in order to demonstrate his *prima facie* case. *Hoskins*, 227 F.3d at 731.

## CONCLUSION

For the reasons stated herein, the defendant's Motion for Summary Judgment will be granted. The plaintiff's § 1981 disparate treatment claim will be dismissed for failure to establish a *prima facie* case, and his remaining claims will be dismissed as untimely under the statute of limitations.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

11